## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Weaver Leather, LLC | ) | Case No. |
| | ) | |
| Plaintiff, | ) | Judge |
| | ) | |
| vs. | ) | |
| | ) | Jury Trial Demanded |
| Climbing Innovations, LLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Richard Mumford | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

For its complaint against defendants Richard Mumford and Climbing Innovations, LLC ("Climbing Innovations" and, collectively, "Mumford"), plaintiff Weaver Leather, LLC ("Weaver Leather") states:

## Summary of Case

1.      Weaver Leather is a local, northeast Ohio based company with humble beginnings that has dedicated itself over the past several decades to innovations in the arborist climbing industry.

2.      In recognizing the value of intellectual property and patented technology, Weaver Leather has developed a modest, yet highly valuable, portfolio related to Weaver Leather's innovative products in the arborist, equine, livestock, pet, and leather supply industries, including U.S. Patent No. 9,352,190 (the "'190 Patent") related to a knee ascender assembly for rope climbing. (Ex. A.) Weaver Leather prides itself on offering high

quality and well-made goods, and holds a reputation in the market as a respectable family-run business with a focus on quality and workmanship.

3.     ██████████████████████████████████████
██████████████████████████ Mumford nevertheless continues to undercut Weaver Leather's legal rights by making, using, selling, and offering to sell products that directly and indirectly infringe the '190 Patent. (Ex. B.) Mumford also continues to relentlessly disparage Weaver Leather ████████████████████████ and has incited wrong, improper judgment on Weaver Leather's name, integrity, reputation, and business.

4.     Accordingly, Weaver Leather seeks to enjoin Mumford's ongoing patent infringement and disparagement, and to obtain monetary relief for the harm Mumford has caused.

## Parties

5.     Weaver Leather is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 7540 CR 201, Mount Hope, Ohio.

6.     Upon information and belief, Climbing Innovations is a limited liability company organized and existing under the laws of the State of Georgia, and is located at 6328 Cedarcrest Rd. NW, Acworth, Georgia, 30101.

7.     Upon information and belief, Richard Mumford is the owner and operator of Climbing Innovations and does business under the same name.

8.     Upon information and belief, Richard Mumford is an individual who resides in Georgia at 6328 Cedarcrest Rd. NW, Acworth, GA 30101.

9.      Upon information and belief, Mumford offers for sale and sells various climbing products on its website https://climbing-innovations.myshopify.com.

10.      Upon information and belief, Richard Mumford, acting as a representative of or in concert with Climbing Innovations, maintains an active online presence at least on http://www.treebuzz.com under the username "yoyoman" and https://www.youtube.com under the username "Richard Mumford."

**Jurisdiction and Venue**

11.      This Court has subject matter jurisdiction over Weaver Leather's patent infringement claims under 28 U.S.C. §§ 1331 and 1338(a) because they arise under federal law and, more specifically, the U.S. Patent Act, 35 U.S.C. § 1 *et seq*.

12.      This Court has subject matter jurisdiction over Weaver Leather's breach of contract claims under the federal diversity jurisdiction statute, 28 U.S.C. § 1332, because the parties are diverse and the amount in controversy exceeds $75,000.

13.      Alternatively, this Court has supplemental jurisdiction over Weaver Leather's remaining claims pursuant to 38 U.S.C. § 1367, including breach of contract, because those claims are so related to Weaver Leather's patent infringement claim, that together the claims form part of the same case or controversy under Article III of the United States Constitution.

14.      This Court has personal jurisdiction over Mumford ████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

███████████████████████████

███████████████████████

15.     This Court also has personal jurisdiction over Mumford at least because among other things, upon information and belief, Mumford does business in Ohio and offers for sale products, including infringing products, anywhere in the U.S. including in Ohio and to Ohio businesses or individuals. By willfully infringing the '190 Patent, Mumford is intentionally causing tortious harm to Weaver Leather in Ohio; upon information and belief, Mumford has sold products, including infringing products, in Ohio and to Ohio businesses or individuals.

16.     Venue is proper under 28 U.S.C. § 1391 because Mumford is subject to personal jurisdiction in this district under Ohio law, has agreed that any dispute arising out of or relating to the Agreement has exclusive jurisdiction in this district and, therefore, "resides" in this district according to federal law.

### Relevant Facts

I.     **Weaver Leather's Innovations and the '190 Patent**

17.     Founded in Ohio in 1973 in a small 20' x 40' garage down the road from the current facility near Mount Hope, Weaver Leather has dedicated itself to innovative products in the arborist, equine, livestock, pet, and leather supply industries. Weaver Leather has a reputation as a respectable, committed, family-run business with small town values that places a high emphasis on quality, workmanship, family, and the local community. Weaver Leather prides itself on offering high quality and well-made goods.

18.    Weaver Leather currently owns the '190 Patent related to these innovations. The '190 Patent, entitled "Knee Ascender Assembly for Rope Climbing," was duly and legally issued on May 31, 2016, and names Michael Allen Frankhauser as the inventor. (Ex. A.) Weaver Leather is the sole assignee of and owns all the right, title, and interest in the '190 Patent. (Ex. C.) Weaver Leather sells products that are marked in accordance with 35 U.S.C. §287 as covered by the '190 Patent.

19.    The '190 Patent is valid and enforceable. ██████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████
████  ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████

21.    Mumford has knowledge of and is aware of the '190 Patent.

## II.    **Mumford's Prior Infringement and Subsequent Agreement**

22.    In 2017-2018, Mumford made and sold an infringing product under the name "Self Advancing Knee Ascender," also referred to as the SAKA, in violation of 35 U.S.C. § 271(a), (the "SAKA" device or the "First Infringing Product").

23.     As a result, Weaver Leather filed a first suit against Mumford to enforce Weaver Leather's rights in the '190 Patent. *Weaver Leather, LLC v. Climbing Innovations LLC, et al.*, Case No. 2:19-cv-00231-JP (E.D. Pa.) (the "First Lawsuit"). (Ex. D.)

24.     The Parties resolved the First Lawsuit by settling and executing the Agreement. (Ex. B.) The Agreement was properly executed and is valid. ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████

25.     Weaver Leather satisfied its obligations under the Agreement ████████

█████████████████████

26.     Mumford, however, continues to breach the Agreement ██████████

████████████████████████████████████████

## III.     <u>Mumford Continues to Infringe the '190 Patent</u>

27.     Upon information and belief, since at least June 14, 2019, Mumford introduced to market and offered for sale the SAKA-mini-MAX. Upon information and belief, since at least June 27, 2019, Mumford introduced to market and offered for sale the SAKA mini conversion kit, which is intended to be used in combination with the SAKA-mini to provide the equivalent of the SAKA-mini-MAX when assembled (collectively, the "SAKA Products").

28.     Mumford   made   postings   on   https://www.portal.treebuzz.com/   and www.youtube.com on or about the above dates to introduce to market and advertise the SAKA Products. In regard to Mumford's postings on at least YouTube, upon information and belief, Mumford receives advertisement revenue per view.

29.     The SAKA Products are currently available for purchase on Mumford's website   at   https://climbing-innovations.myshopify.com/products/saka-mini-max   and https://climbing-innovations.myshopify.com/products/saka-mini-conversion-kit,   (Ex.   E and Ex. F, respectively.)

30.     In Mumford's YouTube videos, forum postings, and business advertisements, Mumford repeatedly indicates that the SAKA-mini-MAX, or the SAKA mini conversion kit as attached to the SAKA-mini, form a version of the original SAKA device. For example, in its YouTube video introducing the SAKA-mini-MAX, Mumford states that "wouldn't it be cool if we could turn this right back into an original SAKA" and that "some of the innovation comes from the patented original SAKA." (*See* https://www.youtube.com/ watch?v=qUnR7jFHZ0I.) The advertisement of the SAKA mini conversion kit similarly states that the kit "convert[s] the SAKA-mini to the performance of the original SAKA." (*See* https://climbing-innovations.myshopify.com/products/saka-mini-conversion-kit (Ex. F).)

███ ███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████ █████████████████████████

32.     By making, using, selling, and offering to sell the SAKA Products, Mumford directly and indirectly infringes the '190 Patent ████████████████████████ ████████████████

## IV.   Mumford Has Disparaged Weaver Leather

██ ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

34.     Richard Mumford, acting by, through, or as a representative of Climbing Innovations, has made at least the following disparaging statements and representations on http://www.treebuzz.com under the username "yoyoman" and on https://www.youtube.com under the username "Richard Mumford":

35.     **"I am asking for help..." TreeBuzz Forum Posting by yoyoman:** http://www.treebuzz.com/forum/threads/i-am-asking-for-help-as-this-appears-to-be-my-last-choice.41197/



36. **"I am asking for help…" TreeBuzz Forum Posting by yoyoman:**
http://www.treebuzz.com/forum/threads/i-am-asking-for-help-as-this-appears-to-be-my-last-choice.41197/



37. **"I am asking for help…" TreeBuzz Forum Posting by yoyoman:**
http://www.treebuzz.com/forum/threads/i-am-asking-for-help-as-this-appears-to-be-my-last-choice.41197/



38. **"SAKA (Self Advancing Knee Ascender)" YouTube Video by Richard Mumford** https://www.youtube.com/watch?v=kSywHP3fvd4



39. **"The SAKA-mini-MAX" YouTube Video by Richard Mumford** https://www.youtube.com/watch?v=qUnR7jFHZ0I



40. **"SAKAminiMAX" TreeBuzz Forum Posting by yoyoman:**
    http://www.treebuzz.com/forum/threads/sakaminimax.40792/#post-610163



41. **"SAKAminiMAX" TreeBuzz Forum Posting by yoyoman:**
    http://www.treebuzz.com/forum/threads/sakaminimax.40792/#post-610163



42. **"SAKAminiMAX" TreeBuzz Forum Posting by yoyoman:**
    http://www.treebuzz.com/forum/threads/sakaminimax.40792/#post-610163



43. **"SAKA mini Conversion Kit" TreeBuzz Forum Posting by yoyoman:**
http://www.treebuzz.com/forum/threads/saka-mini-conversion-kit.40877/#post-611571



44. These disparaging statements and representations cause or tend to cause the recipient of the communication to question Weaver Leather's business condition, integrity, competence, good character, or product quality.

45. The following are non-limiting examples of recipients' responses elicited by Mumford's disparaging statements:

**"I am asking for help…" TreeBuzz Forum Posting by yoyoman:**
http://www.treebuzz.com/forum/threads/i-am-asking-for-help-as-this-appears-to-be-my-last-choice.41197/





**rico**
Well-Known Member

Aug 15, 2019                                                          #6

I would kick down some $ for a GoFundMe legal fund so you could fight Weaver. I also think that it is high time that the arb/treeman community stop supporting them in anyway shape or form. I also think that places like Wesspur, TreeStuff and the likes need to decide the type of companies they choose to do business with. I for one will never purchase another Weaver product from here forward. Fuck em'. Viva YoYoMan and ClimbingInnovations!!!

swingdude, Stihl4life, Mowerr and 11 others



**SomethingWitty**
Arkansawyer

Aug 15, 2019                                                          #7

Just as a note, I'd like to see a nice generic letter that we can copy and paste to our e-mail to send weaver explaining that as an arborist we will no longer be purchasing any of their products, not because of the original harassment that you recieved, but because they are still being dicks about it even though you rolled with the punches and figured out how to follow the stupid rules that were imposed upon you.

I'd donate what I could spare.
The velox sucks.

kiteflyingeek, Stihl4life, Mowerr and 6 others



**rico**
Well-Known Member

Friday at 12:29 AM                                                   #14

> Crimsonking said: ⊕
>
> How many of us have weaver products? Who is willing to join me in shipping them to weaver with this letter mentioned above? I have their knockoff chestie that I use every day. I'd be happy to send it to them.
>
> #SAKAissuperior

I'm in. We all start sending their products back to them and include a letter stating our unhappiness with their business practices and making it crystal clear that we will no longer be purchasing in their products. Sounds like a solid plan that might actually get their attention.

swingdude, Stihl4life and 39Buick



**Burrapeg**
Well-Known Member

Monday at 5:20 PM                                                    #91

The unfortunate truth is there may be no actual infringement at all. Just a large company, with big legal budget and in-house lawyers, that knows they can stifle a small innovator.

Woodwork, Pelorus, Tom Dunlap and 2 others



**Birdyman88**
Active Member

Friday at 4:19 AM                                                                 ⁛  #26

**Sending Demand Letters Under Bad Faith**

Sending multiple patent demand letters to users and small business owners with no intention of filing a lawsuit is considered harmful. That's because those who receive letters sent in this matter may be unfamiliar with patent law and without the resources to defend themselves in court. As a result, they may agree to pay a licensing fee or settlement even when not actually guilty of infringement.

This practice, known as sending demand letters in bad faith, is under attack through multiple legal channels. Legislative proposals currently in Congress require specific information to be included in a demand letter for it to prove willful infringement. They may also require the Federal Trade Commission (FTC) to consider bad faith demand letters a deceptive trade practice.

 Rob Stafari, TimberJack, Eric H-L and 8 others

---



**Joeybagodonuts**
Member

Friday at 10:08 PM                                                                 ⁛  #48

Wow, what a bunch of complete freaking frauds over at Weaver! Theyre soooo threatened by one man moving the ball forward, that they need to constantly waste large sums of $$ & resources on patent lawyers..?? Is this just a case of someone at Weaver who's sole job is to stiffle all other means of product innovation? & If so, where are all the other examples of cease & desist orders, this industry is completely saturated with products that all look, function & are constructed in the same way.. in most cases identical in construction..

Even though Rich has gone completely out of his way to innovate above & beyond the Velox, i knew as soon as i saw that stiff tether again, Id hear Weaver crying about some bullshit. It's like Weaver thinks it owns all rights to anything regarding bungee cords inside a peice of stiff webbing. Patents aren't meant to be blanket ownership over a general idea & absolutely anything related to it.. You've clearly designed around the patent & have a way better product.. i mean for Christ sake, Weaver couldn't even design the Velox to fit around my damn size 12 boot.. but they want to shut down everything else.. what utter bullshit!

Honstly, This whole thing seems alot more personal than patent related.

 Pelorus, deevo, climbstihl and 2 others

---



**DSMc**
Well-Known Member

Sunday at 4:06 AM                                                                 ⁛  #73

I have a Velox and it works fine and I am happy with it. I am not happy with Weaver being dicks on this issue. Several people have mentioned that a boycott by the arb community would have little effect on Weaver. As a whole, maybe so, but they are doing this only to protect the sales of their knee ascenders. Arborists, by a wide margin are the ones using these. If we don't buy them who will?

Last edited: Sunday at 3:33 PM

 Crimsonking, Tom Dunlap, climbstihl and 4 others

46.     As evidenced by the response to Mumford's postings, comments, likes, etc., these disparaging statements and representations undermine Weaver Leather's reputation, character, and goodwill, and cast significant doubt on Weaver Leather's rights in intellectual property, fair business dealings, and integrity as a company in enforcing its rights in good faith.

47.     ██████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████

## V.     Mumford Refuses to Comply

48.     After discovering that Mumford again sold infringing products and disparaged Weaver Leather, Weaver Leather sought to resolve this with Mumford without court intervention. (Ex. G.)

49.     Mumford, however, refused to stop selling its infringing SAKA Products and made further disparaging statements or representations after receiving Weaver Leather's correspondence.

50.     As a last effort for out of court resolution, Weaver Leather spoke to Richard Mumford in an effort to resolve their differences, stop Mumford's disparagement, and stop any further infringement by working together. While Weaver Leather initially believed the Parties made some progress, Mumford immediately after the call wrongly posted on social media platforms that he received "threats" and "pressure" from Weaver Leather. (See ¶ 35.)

51.     Since Mumford ███████████████████████████████████████

continues to infringe the '190 Patent and disparage Weaver Leather after any

communication made to Mumford, Weaver Leather has had no choice but to defend itself,

its employees, and its rights in court.

## Count I
### Infringement of the '190 Patent

52.     Weaver Leather incorporates by reference all allegations in all preceding

paragraphs of this complaint as if fully set forth herein.

53.     Weaver Leather is the sole assignee of and owns all the right, title, and

interest in the '190 Patent. (Ex. C.) The '190 Patent is valid and enforceable. ██████

████████████████████████████████████████████████████████████████

████████████████████████████████████████

54.     Mumford has directly and indirectly infringed, and, upon information and

belief, continues to directly and indirectly infringe, the '190 Patent at least by making,

using, selling, and offering for sale the SAKA Products.

55.     As a non-limiting, illustrative example, below is a comparison of the

limitations of claim 1 of the '190 Patent to Mumford's SAKA-mini-MAX.

| Claims | '190 Patent | SAKA-mini-MAX |
|--------|-------------|---------------|
| Claim 1 | An apparatus for use in rope climbing comprising: | Mumford offers for sale and sells the SAKA-mini-MAX, which is an apparatus for use in rope climbing. |

| | | |
|---|---|---|
| | an elastic cord having a fixed end and a free end defining a length; | The SAKA-mini-MAX includes a "super stretch bungee" having fixed end and a free end defining a length.<br><br><br><br>**free end of elastic cord**  **fixed end of elastic cord** |
| | a load bearing member having a hollow core open at an aperture, | The SAKA-mini-MAX includes a load bearing member having a hollow core open at an aperture:<br><br><br><br>**aperture**<br>**load bearing member having hollow core** |
| | wherein the fixed end of the elastic cord is secured relative to the load bearing member, | The fixed end of the elastic cord of the SAKA-mini-MAX is secured relative to the load bearing member. The fixed end of the elastic cord is knotted and protrudes from the load bearing member, which is furthermore consistent with a potential |

| | | |
|---|---|---|
| | | embodiment disclosed in Col. 6, ll. 24-27 of the '190 Patent. |
| | an interior portion of the length of the elastic cord extends from the fixed end through the hollow core to the aperture, and an exterior portion of the length of the elastic cord extends through the aperture to the free end external to the load bearing member; | The elastic cord of the SAKA-mini-MAX has an interior portion of the length extending from the fixed end through the hollow core to the aperture, and an exterior portion of the length of the elastic cord extends through the aperture to the free end external to the load bearing member.  |
| | an ascender secured to the load bearing member adjacent to the aperture; and | The SAKA-mini-MAX includes an ascender secured to the load bearing member adjacent the aperture. |



|  |  |  |
|---|---|---|
|  | a foot attachment depending from the load bearing member. | The SAKA-mini-MAX includes a foot attachment depending from the load bearing member. |

56.     As shown above, the SAKA-mini-MAX includes each of the limitations in at least claim 1 of the '190 Patent. Therefore, the SAKA-mini-MAX directly infringes the '190 Patent. Additionally, the SAKA-mini-MAX comes preassembled with the SAKA MAX attachment attached to the SAKA-mini to form the SAKA-mini-MAX. (Ex. H.) As a result, the SAKA-mini-MAX is sold as a preassembled, singular product that directly infringes the '190 Patent.

57.     The SAKA mini conversion kit similarly indirectly infringes the '190 Patent. The SAKA mini conversion kit (essentially the equivalent of the SAKA MAX attachment) is intended to be attached to the SAKA-mini by an end user to form essentially the equivalent of the SAKA-mini-MAX. The SAKA mini conversion kit has no other use than as an attachment to the SAKA mini, indicated by its namesake as well as Mumford's videos, posts, and business advertisements related to the SAKA mini conversion kit.

58.     Based on Mumford's YouTube videos, forum postings, and business advertisements, Mumford is clearly, but ineffectively, trying to circumvent the '190 Patent by self-proclaiming the SAKA MAX attachment or SAKA mini conversion kit as a "non-load bearing member" and the SAKA mini as a "load bearing member." These self-proclaimed names, however, even if accurate, would not preclude a finding that the SAKA Products directly or indirectly infringe the '190 Patent. Moreover, these self-proclaimed names mischaracterize the language and scope of the '190 Patent claims as well as the structure and functionality of the SAKA Products.

59.     In Mumford's YouTube videos, including postings, and business advertisements, Mumford repeatedly indicates that the SAKA-mini-MAX, or the SAKA

mini conversion kit as attached to the SAKA-mini, convert or bring back the device to the performance of the "original SAKA" and that "some of the innovation comes from the patented original SAKA." (*See* https://www.youtube.com/watch?v=qUnR7jFHZ0I and https://climbing-innovations.myshopify.com/products/saka-mini-conversion-kit).

60.    The SAKA Products' only intended and feasible use is as a as a knee ascender assembly for rope climbing. Moreover, the only and feasible use of the SAKA mini conversion kit is to convert the SAKA-mini into the equivalent of the SAKA-mini-MAX. Additionally, the purpose of the SAKA Products is to provide the equivalent of the original SAKA or First Infringing Product that was the basis of Weaver Leather's First Lawsuit against Mumford.

61.    Any use of the SAKA Products as an apparatus for use in rope climbing are acts of infringement of the '190 Patent.

62.    Because the only intended and feasible use of the SAKA Products is an infringing use, the SAKA Products have no substantial non-infringing uses.

63.    Mumford has induced infringement of the '190 Patent at least because, with knowledge of the '190 Patent, it intentionally and actively induced end users of the SAKA Products to use them in a manner that infringes the '190 Patent with specific intent that they do so.

64.    Mumford has further induced infringement of the '190 Patent at least by selling the SAKA Products to distributors, retailers, and other resellers with the specific intent that they infringe the '190 Patent by reselling the SAKA Products to others.

65.     Mumford has contributed to infringement of the '190 Patent at least by selling the SAKA Products, which have no substantial use other than an infringing use as a knee ascender assembly for rope climbing.

66.     Mumford's direct and indirect infringement of the '190 Patent was, and continue to be, willful and deliberate.

67.     Weaver Leather has been and will continue to be damaged by Mumford's infringing activities. Mumford's infringing activities, upon information and belief, have caused loss business, which in turn hurts the local economy and causes local people to lose their jobs.

68.     Weaver Leather has suffered irreparable harm due to Mumford's infringement and will continue to be irreparably harmed unless and until Mumford is enjoined by this Court. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

### Count II
*Breach of Contract-Infringement*

69.     Weaver Leather incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully set forth herein.

70.     As established herein, the Parties previously executed the Agreement, Weaver Leather performed its obligations under the Agreement, and Mumford has breached the Agreement ████████████████████████████████

██████████████ resulting in damage to Weaver Leather.

71.     Mumford has directly and indirectly infringed, and continues to directly and indirectly infringe, the '190 Patent by making, using, selling, and offering for sale the SAKA Products.

72.     Despite executing the Agreement, ███████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████ such that Mumford's breaches were, and continue to be, willful and deliberate.

73.     Weaver Leather has been and will continue to be damaged by Mumford's infringing activities, in an amount to be established at trial.

74.     Weaver Leather has been suffering irreparable harm due to Mumford's breach of contract █████████████████████████████ and will continue to be irreparably harmed unless and until Mumford is enjoined by this Court. ███████████████████████████████████████████████████ █████████████████████████████

### Count III
*Breach of Contract-Disparagement*

75.     Weaver Leather incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully set forth herein.

76.     As established herein, the Parties previously executed the Agreement, Weaver Leather performed its obligations under the Agreement, and Mumford has breached the Agreement █████████████████████████████████ █████████████████████████████ resulting in damage to Weaver Leather.

77.     Mumford's postings, comments, and likes constitute direct or indirect disparaging statements or representations, by word or gesture, about Weaver Leather that cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character, or product quality of Weaver Leather. For example, after various settlement and negotiation attempts by Weaver Leather, Mumford has nevertheless wrongly posted on social media platforms that he has received "threats" and "pressure" from Weaver Leather.

78.     Mumford's postings, comments, and likes extend well beyond any statement or representation which compares products or their performance generally, but rather these disparaging statements and representations are rich in false, misleading or opinionated statements.

79.     For example, Mumford's statements or representations often appeal to Mumford's own patent aimed at the First Infringing Product and suggest or directly state such patent confers on Mumford the right to operate and sell the underlying device and, consequently, that any claims of infringement against the First Infringing Product are effectively done in bad faith. Such statements or representations are false and misleading as subsequent patents have no bearing on freedom to operate and do not convey any right to make, use, offer to sell, or sell a disclosed device, but rather merely prevent others from doing so. These claims allude to a corrupt intent by Weaver Leather and undermine Weaver Leather's integrity and ownership of its intellectual property rights when Weaver Leather is simply acting within the scope of the law to enforce its rights.

80.     Mumford's statements or representations also suggest or directly state that the SAKA Products are distinguishable from Weaver Leather's HAAS ascent systems and accessories. Such statements or representations are also false and misleading as it is only the claims of a patent that define the rights in the intellectual property.

81.     Mumford's postings, comments, and likes have incited misplaced and misconstrued public disdain against Weaver Leather that wrongly undermines Weaver Leather's reputation, character, and goodwill, and casts significant doubt on Weaver Leather's intellectual property rights, fair business dealings, and integrity.

82.     In fact, responses to Mumford's statements show the disparagement and harm to Weaver Leather, including wrongful and inaccurate terms such as "corporate bullying," "harassment," "unhappiness with business practices," "bad faith," "fraud", "sole job...to stifle...innovation," "no actual infringement...just a large company with big legal budget," etc. Mumford's continued disparagement caused these wrongful statements to be made.

83.     Despite executing the Agreement,  such that Mumford's breaches were, and continue to be, willful and deliberate.

84.     Weaver Leather has been and will continue to be damaged by Mumford's disclosure of confidential information and disparaging activities, in an amount to be

established at trial. ████████████████████████████████████████

████████████████████████████████████████

85.     Further Weaver Leather has been suffering irreparable harm due to Mumford's breach of contract ████████████████████████████████████████ ███████████████ and will continue to be irreparably harmed unless and until Mumford is enjoined by this Court. ████████████████████████████████████████

████████████████████████████████████████

### Prayer for Relief

**WHEREFORE**, Weaver Leather prays for judgment against Mumford as follows:

(A)     Finding that Mumford has directly infringed one or more claims of the '190 Patent under 35 U.S.C. § 271(a);

(B)     Finding that Mumford has induced infringement of one or more claims of the '190 Patent under 35 U.S.C. § 271(b);

(C)     Finding that Mumford has contributed to the infringement of one or more claims of the '190 Patent under 35 U.S.C. § 271(c);

(D)     Finding that Mumford has breached the Agreement;

(E)     Finding that Mumford has made multiple disparaging statements or representations ████████████████████████████;

(F)     Preliminary and permanent injunctive relief enjoining Mumford, its officers, directors, managers, employees, affiliates, agents, representatives, parents, subsidiaries, successors, assigns, those in privity with them, and all others aiding, abetting, or acting in concert or active participation therewith, from: (a) making, using, selling, offering to sell, or importing any product covered by any of the claims of the '190 Patent, (b) otherwise directly or indirectly infringing any of the claims of the '190 Patent, and (c) disparaging Weaver Leather ████████████████████████████████████████;

(G)     Awarding Weaver Leather compensatory damages under 35 U.S.C. § 284;

(H)     Awarding Weaver Leather treble damages under 35 U.S.C. § 284;

(I)     Ordering Mumford to account to Weaver Leather for all sales, revenues, and profits derived from its infringing activities and that three times those profits be disgorged and paid to Weaver Leather under 35 U.S.C. § 284;

████████████████████████████████████████████████████████
████████████████████████████

(K)     Awarding Weaver Leather its costs, attorneys' fees, investigatory fees, and expenses to the full extent provided ████████████████████ by 35 U.S.C. § 285;

(L)     Awarding Weaver Leather pre-judgment and post-judgment interest;

(M)     Awarding Weaver Leather any other actual and punitive damages to which Weaver Leather is entitled under applicable federal and state laws; and

(N)     Such other and further relief as allowed at law or in equity that the Court deems to be appropriate, just, and proper.


Dated: August 29, 2019                     __s/ David B. Cupar_____
                                           David B. Cupar
                                           Matthew J. Cavanagh
                                           MCDONALD HOPKINS LLC
                                           600 Superior Avenue, East, Ste. 2100
                                           Cleveland, Ohio 44114
                                           t 216.348.5400 │ f 216.348.5474
                                           dcupar@mcdonaldhopkins.com
                                           mcavanagh@mcdonaldhopkins.com

                                           *Counsel for Weaver Leather, LLC*

## **Jury Demand**

Plaintiff Weaver Leather, LLC hereby demands a jury trial for all issues so triable.


Dated: August 29, 2019                    s/ David B. Cupar
                                          David B. Cupar
                                          Matthew J. Cavanagh
                                          MCDONALD HOPKINS LLC
                                          600 Superior Avenue, East, Ste. 2100
                                          Cleveland, Ohio 44114
                                          t 216.348.5400 │ f 216.348.5474
                                          dcupar@mcdonaldhopkins.com
                                          mcavanagh@mcdonaldhopkins.com

                                          *Counsel for Weaver Leather, LLC*

## VERIFICATION

STATE OF OHIO   )
        )    SS:  VERIFICATION
HOLMES COUNTY  )

Jason Weaver, being first duly sworn, states that he is the President of Weaver Leather, LLC in which capacity he has been authorized to review and verify the foregoing Verified Complaint, that he has read the foregoing Verified Complaint, and that the factual allegations contained therein are true to the best of his knowledge, information and belief and so far as upon information and belief that he believes this information to be true.


_____
  Jason Weaver

SWORN TO BEFORE ME and subscribed in my presence on this 23 day of August, 2019.


_____
  NOTARY PUBLIC

   **BARBARA A. CLARK**
   Notary Public, State of Ohio
My Commission Expires Aug. 24th, 2019