UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| Weaver Leather, LLC | ) | Case No. 5:19-cv-01990 |
|---|---|---|
| Plaintiff, | ) | Judge |
| vs. | ) | |
| Climbing Innovations, LLC | ) | |
| and | ) | |
| Richard Mumford | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

Weaver Leather, LLC ("Weaver Leather") submits this memorandum in support of its Motion for Preliminary Injunction against Climbing Innovations, LLC and Richard Mumford, (together, "Mumford").

**Introduction**

Weaver Leather is a local, northeast Ohio based company with humble beginnings that has dedicated itself over the past several decades to innovations in the arborist climbing industry.

In recognizing the value of intellectual property and patented technology, Weaver Leather has developed a modest, yet highly valuable, portfolio related to Weaver Leather's innovative products in the arborist, equine, livestock, pet, and leather supply industries, including U.S. Patent No. 9,352,190 (the "'190 Patent") related to a knee ascender assembly for rope climbing. Weaver Leather prides itself on offering high quality and well-made

goods, and holds a reputation in the market as a respectable family-run business with a focus on quality and workmanship.

███████████████████████████████████████████████████████

████████████████████████ Mumford nevertheless continues to undercut Weaver Leather's legal rights by making, using, selling, and offering to sell products that directly and indirectly infringe the '190 Patent. Mumford also continues to relentlessly disparage Weaver Leather ██████████████████████ and has incited wrong, improper judgment on Weaver Leather's name, integrity, reputation, and business.

Accordingly, Weaver Leather has and will continue to suffer irreparable harm due to Mumford's wrongful actions. Weaver Leather seeks a preliminary injunction to enjoin Mumford's ongoing patent infringement and disparagement.

**Factual Background**

I. **Weaver Leather's Innovations and the '190 Patent**

Founded in Ohio in 1973 in a small 20' x 40' garage down the road from the current facility near Mount Hope, Weaver Leather has dedicated itself to innovative products in the arborist, equine, livestock, pet, and leather supply industries. (Compl. ¶ 17.) Weaver Leather has a reputation as a respectable, committed, family-run business with small town values that places a high emphasis on quality, workmanship, family, and the local community. (*Id.*) Weaver Leather prides itself on offering high quality and well-made goods. (*Id.*)

Weaver Leather currently owns the '190 Patent related to rope climbing ascension systems for arborists, duly and legally issued on May 31, 2016. (Compl. ¶ 18 (Ex. A).)

Weaver Leather is the sole assignee of and owns all the right, title, and interest in the '190 Patent. (Compl. ¶ 18 (Ex. C).) Weaver Leather sells products that are marked in accordance with 35 U.S.C. §287 as covered by the '190 Patent. (Compl. ¶ 18.)

The '190 Patent is valid and enforceable. (Compl. ¶ 19.) ████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████

Mumford has knowledge of and is aware of the '190 Patent. (Compl. ¶ 21.)

## II. **Mumford's Prior Infringement and Subsequent Agreement**

In 2017-2018, Mumford made and sold an infringing product under the name "Self Advancing Knee Ascender," also referred to as the SAKA, in violation of 35 U.S.C. § 271(a), (the "SAKA" device or the "First Infringing Product"). (Compl. ¶ 22.) As a result, Weaver Leather filed a first suit against Mumford to enforce Weaver Leather's rights in the '190 Patent. *Weaver Leather, LLC v. Climbing Innovations LLC, et al.*, Case No. 2:19-cv-00231-JP (E.D. Pa.) (the "First Lawsuit"). (Compl. ¶ 23 (Ex. D).)

The Parties resolved the First Lawsuit by settling and executing the Agreement. (Compl. ¶ 24 (Ex. B).) The Agreement was properly executed and is valid. (*Id.*) ████

Weaver Leather satisfied its obligations under the Agreement ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Compl. ¶ 25.)

Mumford, however, continues to breach the Agreement ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

### III. <u>Mumford Continues to Infringe the '190 Patent</u>

Since at least June 14, 2019, Mumford introduced to market and offered for sale the SAKA-mini-MAX. (Compl. ¶ 27.) Since at least June 27, 2019, Mumford introduced to market and offered for sale the SAKA mini conversion kit, which is intended to be used in combination with the SAKA-mini to provide the equivalent of the SAKA-mini-MAX when assembled (collectively, the "SAKA Products"). (*Id*.) Mumford has made and submitted various YouTube videos, forum postings, and business advertisements related to the SAKA Products, and Mumford likely receives advertisement revenue per view of its YouTube videos. (Compl. ¶ 28.) The SAKA Products are currently available for purchase on Mumford's website (Compl. ¶ 29 (Ex. E and Ex. F, respectively).)

In Mumford's YouTube videos, forum postings, and business advertisements, Mumford repeatedly indicates that the SAKA-mini-MAX, or the SAKA mini conversion kit as attached to the SAKA-mini, form a version of the original SAKA device. (Compl. ¶ 30.)

For example, in its YouTube video introducing the SAKA-mini-MAX, Mumford states that "wouldn't it be cool if we could turn this right back into an original SAKA" and that "some of the innovation comes from the patented original SAKA." (*Id*.) The advertisement of the SAKA mini conversion kit similarly states that the kit "convert[s] the SAKA-mini to the performance of the original SAKA." (Compl. ¶ 30 (Ex. F).)

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████

By making, using, selling, and offering to sell the SAKA Products, Mumford directly and indirectly infringes the '190 Patent ███████████████████████████ ██████████████████████

## IV. Mumford Has Disparaged Weaver Leather

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████

Mumford has made numerous disparaging statements and representations ▮ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*See* Compl. ¶¶ 34-43 for exemplary disparaging statements and representations made by Mumford.) These disparaging statements and representations cause or tend to cause the recipient of the communication to question Weaver Leather's business condition, integrity, competence, good character, or product quality. (*See* Compl. ¶ 45 for exemplary reactions of the public in response to Mumford's disparaging statements and representations.) As evidenced by the response to Mumford's postings, comments, likes, etc., these disparaging statements and representations undermine Weaver Leather's reputation, character, and goodwill, and cast significant doubt on Weaver Leather's rights in intellectual property, fair business dealings, and integrity as a company in enforcing its rights in good faith. (Compl. ¶¶ 44 & 46.)

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

### V. **Mumford Refuses to Comply**

After discovering that Mumford again sold infringing products and disparaged Weaver Leather, Weaver Leather sought to resolve this with Mumford without court intervention. (Compl. ¶ 48 (Ex. G).) Mumford, however, refused to stop selling its infringing SAKA Products and made further disparaging statements or representations after receiving Weaver Leather's correspondence. (Compl. ¶ 49.)

As a last effort for out of court resolution, Weaver Leather spoke to Richard Mumford in an effort to resolve their differences, stop Mumford's disparagement, and stop any further infringement by working together. (Compl. ¶ 50.) While Weaver Leather initially believed the Parties made some progress, Mumford immediately after the call wrongly posted on social media platforms that he received "threats" and "pressure" from Weaver Leather. (Compl. ¶ 35 & 50.)

Since Mumford ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ continues to disparage Weaver Leather after any communication made to Mumford, Weaver Leather has had no choice but to defend itself, its employees, and its rights in court.

## Law and Argument

### I. Legal standard

The legal standard for a preliminary injunction in patent cases is well known. A movant is entitled to a preliminary injunction if it establishes: (1) a likelihood of success on the merits; (2) it is likely to suffer irreparable harm in the absence of a preliminary injunction; (3) the issuance of the preliminary injunction would not cause substantial harm to others; and (4) the public interest would be served by issuing the preliminary injunction. *Butler v. Hotel California, Inc.,* 106 F. Supp. 3d 899, 904 (N.D. Ohio 2015).

### II. Weaver Leather is Likely to Succeed on the Merits

Weaver Leather is likely to succeed on the merits for its claims of patent infringement and breach of contract.

#### A. Patent Infringement

To establish a likelihood of success on the merits for a patent infringement claim, "a patentee must show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017).

1. *Weaver Leather's Patent Infringement Claim Will Withstand Challenges to Validity and Enforceability*

As a matter of law, a "patent shall be presumed valid." 35 U.S.C. § 282(a). The '190 Patent enjoys the same presumption of validity at every stage of litigation including during preliminary injunction proceedings. *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).



Therefore, Weaver Leather is likely to succeed on the merits as to the validity and enforceability of its patent.

2. <u>The SAKA Products Infringe the '190 Patent</u>

A patent infringement analysis involves the two-step process of "construing the claims and comparing the properly construed claims to the accused product." *Tinnus Enterprises, LLC v. Telebrands Corp.*, 846 F.3d 1190, 1203 (Fed. Cir. 2017) (quoting *Advanced Steel Recovery, LLC v. X–Body Equip., Inc.*, 808 F.3d 1313, 1316 (Fed. Cir. 2015)).

Where, as here, the claim terms consist of common, easy-to-understand English words that are used consistent with their ordinary and customary meaning, courts generally decline to issue any formal construction because the meaning is clear from the words themselves and formal construction may actually complicate things. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010); *see also Biotec Biologische Naturverpackungen GmbH & Co. v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) (affirming not to construe "melting" because it carried its ordinary meaning).

The '190 Patent issued on May 31, 2016, and is directed to a knee ascender assembly for rope climbing. (Ex. A.) Weaver Leather is the sole assignee of and owns all the right, title, and interest in the '190 Patent. (Compl. ¶ 55 (Ex. C.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The SAKA-mini-MAX includes each of the limitations in at least claim 1 of the '190 Patent. (Compl. ¶ 55 (Ex. I).) Thereby, the SAKA-mini-MAX directly infringes the '190 Patent. (*Id.*) Additionally, the SAKA-mini-MAX comes preassembled with the SAKA MAX attachment attached to the SAKA-mini to form the SAKA-mini-MAX. (Compl. ¶ 56 (Ex. H).) As a result, the SAKA-mini-MAX is sold as a preassembled, singular product that directly infringes the '190 Patent.

The SAKA mini conversion kit similarly indirectly infringes the '190 Patent. The SAKA mini conversion kit is intended to be attached to the SAKA mini by an end user to form the equivalent of the SAKA-mini-MAX. (Compl. ¶ 57.) The SAKA mini conversion kit has no other use than as an attachment to the SAKA mini, indicated by its namesake as well as the Mumford's videos, posts, and business advertisements related to the SAKA mini conversion kit. (*Id.*)

The Patent Act provides relief where anyone "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271. At a minimum Mumford uses, makes, offers for sale, and sells its SAKA Products in the United States in violation of 35 U.S.C. § 271, which constitutes patent infringement.

Thus, Weaver Leather has shown more than a likelihood of success on the merits for Mumford's infringement of the '190 Patent.

### B. <u>Breach of Contract</u>

The establish breach of contract claim under Ohio law, a plaintiff must prove: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff resulting from the breach. *MMK Grp., LLC v. SheShells Co., LLC*, 591 F. Supp. 2d 944, 963 (N.D. Ohio 2008).

Under Ohio law, it is a "long-held principle that parties to contracts are presumed to have read and understood them and that a signatory is bound by a contract that he or she willingly signed." *Preferred Capital, Inc. v. Power Engineering Group, Inc.*, 112 Ohio St.3d

429, 432 (2007). Moreover, a contract that is "valid on its face will be presumed to be valid in all other respects." *In re Miller*, 428 B.R. 437, 442 (Bankr. N.D. Ohio 2010). To this end, "a party asserting the invalidity of a contract bears the burden of proving a defense to it." *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 467, 628 N.E.2d 1343 (1994).

Weaver Leather and Mumford executed a valid Agreement on March 9, 2018. ((Compl. ¶ 24 (Ex. B).) ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Weaver Leather satisfied its obligations under the Agreement ██████████████████████████████. (Compl. ¶ 25.) Mumford, however, continues to breach the Agreement ███████████████████████████████████████.

1. *Mumford Breached the Settlement Agreement*
   <u>*by Selling the SAKA Products Infringing the '190 Patent*</u>

███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

{8312180: }  11

The SAKA Products infringe the '190 Patent. (Ex. I.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Therefore, Weaver Leather is likely to succeed on its patent infringement and breach of contract claims against Mumford.

2. *Mumford Breached the Settlement Agreement by Making Disparaging Statements and Representations*

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Mumford's postings, comments, and likes constitute disparaging statements or representations ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (See Compl. ¶¶ 34-43 for exemplary disparaging statements and representations made by Mumford.) For example, after various settlement and negotiation attempts by Weaver Leather, Mumford has nevertheless wrongly posted on social media platforms that he has received "threats" and "pressure" from Weaver Leather. (Compl. ¶ 35 & 50.)

Mumford's posting, comments, and likes extend well beyond any statement or representation which compares products or their performance generally, but rather these disparaging statements and representations are rich in false, misleading or opinionated statements.

For example, Mumford's statements or representations often appeal to Mumford's own patent aimed at the First Infringing Product and suggest or directly state such patent confers on Mumford the right to operate and sell the underlying device and, consequently, that any claims of infringement against the First Infringing Product are effectively done in bad faith. Such statements or representations are false and misleading as subsequent patents have no bearing on freedom to operate and do not convey any right to make, use, offer to sell, or sell a disclosed device, but rather merely prevent others from doing so. These claims allude to a corrupt intent by Weaver Leather and undermine Weaver Leather's integrity and ownership of its intellectual property rights when Weaver Leather is simply acting within the scope of the law to enforce its rights.

Mumford's statements or representations also suggest or directly state that the SAKA Products are distinguishable from Weaver Leather's HAAS ascent systems and accessories. Such statements or representations are also false and misleading as it is only the claims of a patent that define the rights in the intellectual property.

Mumford's postings, comments, and likes have incited misplaced and misconstrued public disdain against Weaver Leather that wrongly undermines Weaver Leather's reputation, character, and goodwill, and casts significant doubt on Weaver Leather's intellectual property rights, fair business dealings, and integrity. (Compl. ¶¶ 44, 46, & 81.)

In fact, responses to Mumford's statements show the disparagement and harm to Weaver Leather, including wrongful and inaccurate terms such as "corporate bullying," "harassment," "unhappiness with business practices," "bad faith," "fraud", "sole job…to stifle…innovation," "no actual infringement…just a large company with big legal budget," etc. Mumford's continued disparagement caused these wrongful statements to be made. (See Compl. ¶ 45 for exemplary reactions of the public in response to Mumford's disparaging statements and representations.)

Therefore, Weaver Leather is likely to succeed on its disparagement and breach of contract claims against Mumford.

## III. <u>Weaver Leather Will Continue Suffer Irreparable Harm</u>

Weaver Leather will suffer irreparable harm absent a preliminary injunction. "[T]he irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (citations omitted). Courts have found that irreparable harm includes "price erosion, damage to ongoing customer relationships, loss of customer goodwill (e.g., when an effort is later made to restore the original price), and loss of business opportunities." *Id.*

<u>*Mumford acknowledged that Weaver Leather is entitled to Injunctive Relief for a Breach.*</u> ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

*Damage to Weaver Leather's Reputation:* Mumford's ongoing infringement and disparagement would continue to damage Weaver Leather's reputation in the industry. (Compl. ¶¶ 44, 46, & 81; *see* Compl. ¶ 45 for exemplary reactions of the public in response to Mumford's disparaging statements and representations.) ███████████████████████████████████████████████████████████████████████████████ By repeatedly breaching the Agreement, Mumford will continue to cause irreparable harm to Weaver Leather by wrongly questioning and causing others to question Weaver Leather's business, integrity, competence, and product quality. (*Id.* at ¶ 85.)

*Mumford's Surreptitious Business Activities:* Mumford's surreptitious response to Weaver Leather about its business activities further establishes irreparable harm beyond mere monetary damages. Despite Mumford's wrongful acts, Weaver Leather attempted to resolve this dispute without court intervention. (Compl. ¶ 48 (Ex. G).) Mumford, however, thereafter posted on social media platforms that he has received "threats" and "pressure" from Weaver Leather, further inciting judgment and public disdain onto Weaver Leather's reputation. (Compl. ¶¶ 35 & 50.) Since Weaver Leather's courtesy discussions and notice have only spurred greater and continued disparagement, unfortunately, Weaver Leather has no choice but to seek remedy in court against Mumford. (*Id.*) Mumford's refusal to be forthright with Weaver Leather evidences the irreparable harm that Weaver Leather has suffered and will continue to suffer until Mumford is enjoined. In order to prevent further price erosion, damage to ongoing customer relationships, loss of customer goodwill, and loss of business opportunities, a preliminary injunction is necessary.

## IV. A Preliminary Injunction Would Not Cause Substantial Harm to Others

The third factor considered in deciding whether to award a preliminary injunction is the balance of hardships. This factor requires the court to weigh "the hardship to the patentee if no injunction is entered against the harm to the alleged infringer if the injunction is granted incorrectly." *Abbott Labs. v. Sandoz, Inc.*, 500 F. Supp. 2d 807, 844 (N.D. Ill. 2007) (citing *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988)), *aff'd*, 544 F.3d 1341 (Fed. Cir. 2008).

Here, the balance of equities strongly weighs in favor of a preliminary injunction. Weaver Leather has presented specific evidence establishing patent infringement, disparagement, and breach of contract thereof. (Compl. ¶¶ 52-85.) Weaver Leather has indicated the substantial harm already suffered as a result of Mumford's patent infringement and disparagement, and that Weaver Leather will continue to suffer such substantial harm if Mumford is not enjoined. (*Id.*) Conversely, Mumford will not be harmed by a preliminary injunction because Mumford has no legitimate interest in continuing to violate Weaver Leather's rights. If enjoined, the only "harm" Mumford would suffer is in not being able to sell an infringing product or make disparaging statements against Weaver Leather, such actions which already contravene both the law and prior contract between the Parties.

The potential harm to Weaver Leather's business if Mumford is permitted to infringe far outweighs any inconvenience to Mumford in being prohibited from making and selling products that he does not have any right or freedom to sell. Mumford has many other products, including legitimate non-infringing products, which it can make and sell

during the pendency of this litigation. Further, Mumford is not prohibited ▓▓▓▓▓▓ ▓▓▓▓▓▓ from making statements or representations that compare products or their performance generally, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ So long as Mumford does what it should have been doing all along, it will remain free to lawfully go about its business. Mumford would not be substantially harmed by a preliminary injunction.

The harm to Weaver Leather if a preliminary injunction is denied, on the other hand, would be irreparable and significant in respect to the erosion of patent rights, and the loss of profits and revenue thereof, as well as the damage to Weaver Leather's business condition, integrity, competence, good character, or product quality.

V. **A Preliminary Injunction Serves the Public Interest**

Courts, including the Federal Circuit, have often found that the public interest favors the enforcement of patent rights. *See, e.g., Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("We have long acknowledged the importance of the patent system in encouraging innovation."). Also, an injunction will protect consumers from purchasing an inferior and infringing product during the pendency of this case. Weaver Leather's patented products are manufactured near Mount Hope, Ohio. The loss of any part of Weaver Leather's business would hurt the local economy and cause local people to lose their jobs. (Compl. ¶ 67-68.) On the other hand, there is no public interest that is served by patent infringement, disparagement, and breach of contract. As a result, a preliminary injunction would serve a significant public interest.

## Conclusion

For the foregoing reasons, the Court should issue a preliminary injunction that enjoins Mumford, its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with those persons, from (1) continuing to infringe upon Weaver Leather's utility patent by making, using, selling, offering for sale, or importing the SAKA Products during the pendency of this action; and (2) disparaging Weaver Leather ███████████████████████████████████████

Dated: August 29, 2019
                                           s/ David B. Cupar
                                           David B. Cupar
                                           Matthew J. Cavanagh
                                           McDonald Hopkins LLC
                                           600 Superior Avenue, East, Ste. 2100
                                           Cleveland, Ohio 44114
                                           t 216.348.5400 │ f 216.348.5474
                                           dcupar@mcdonaldhopkins.com
                                           mcavanagh@mcdonaldhopkins.com

                                           *Counsel for Weaver Leather, LLC*