UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Weaver Leather, LLC  )<br>      Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>Climbing Innovations, LLC and  )<br>Richard Mumford  )<br>  )<br>      Defendants.  ) | Case No. 5:19cv1990-JRA<br>Judge John R. Adams |

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFF WEAVER LEATHER, LLC'S
MOTION FOR PRELIMINARY INJUNCTION**

William F. Long
SMITH GAMBRELL & RUSSELL LLP
1230 Peachtree Street NE
Promenade, Suite 3100
Atlanta, Georgia 30309
tel. 404-815-3500
fax 404-685-6859
blong@sgrlaw.com
Counsel for Climbing Innovations, LLC
and Richard Mumford

Defendants Climbing Innovations, LLC and Mr. Richard Mumford submit this memorandum in opposition to Plaintiff Weaver Leather, LLC's ("Weaver's") motion for a preliminary injunction [Docket 2]. Defendants are contemporaneously filing herewith Exhibit A (rebuttal to Weaver's claim chart, which was incorporated by reference into Weaver's brief); Exhibit B (rebuttal to paragraphs 35-43 and 45, which were also incorporated by reference into Weaver's brief); and Exhibit C (the Declaration of Richard Mumford).

The Court should deny Weaver's motion. Weaver will not likely succeed on the merits, because the SAKA-mini-max (the "Mini-max") does not infringe, and selling it does not constitute a breach of the Settlement Agreement (the "Agreement"). ███████████████
███████████████████████████████████████████████████████████████████. Plaintiffs also have failed to make a sufficient showing under the remaining factors relevant to establishing entitlement to preliminary injunctive relief.

Each of these points is addressed in detail, below.

## ARGUMENT

### I. WEAVER IS NOT LIKELY TO SUCCEED ON THE MERITS

**A.    The Mini-max does not infringe the 190 Patent.**

Weaver is not likely to succeed on the merits of its patent infringement claim because at least two claim limitations are missing from the Mini-max.

**1.    The Mini-max is materially different from the Original SAKA.**

An important threshold issue concerns whether the Mini-max is materially different from the Original SAKA (which was accused of infringement in the First Lawsuit). This issue is of critical importance because the First Lawsuit ended in a dismissal with prejudice. *See* Ex. A to Agreement. As a matter of law, the prior dismissal with prejudice constituted an adjudication on

the merits that the Original SAKA did not infringe the 190 patent. *See Hallco Mfg. Co., Inc. v. Foster*, 256 F.3d 1290, 1297 (Fed. Cir. 2001) (a dismissal with prejudice is a judgment on the merits of non-infringement). That adjudication of non-infringement only extended to claims that could have been raised in the First Lawsuit, which would be limited to products that actually existed before the Agreement was entered. *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 479-80 (Fed. Cir. 1991) (prior lawsuit had no preclusive effect for devices that are "materially different" than the specific devices before the court in the first suit).

The Mini-max did not come into existence until after the First Lawsuit and after the Agreement. Mumford Dec. ¶20. Therefore, by raising a new claim of patent infringement against the Mini-max (Complaint, Count I), Weaver is tacitly admitting that the Mini-max must necessarily be materially different from the Original SAKA. If the Mini-max were not materially different, Weaver would now be precluded from asserting that it infringes. *See Foster*, 947 F.2d at 479-80.

Nevertheless, to remove all doubt, Defendants have submitted detailed evidence demonstrating that the presently accused Mini-max is in fact materially different from the previously-accused Original SAKA. The Declaration of Richard Mumford, filed contemporaneously herewith, explains in detail that one of the material differences between the Mini-max and the Original SAKA is the component used to transfer the weight of a climber from the foot loop to the ascender cam. In the presently-accused Mini-max, the component that transfers the weight of a climber from the foot loop to the ascender cam is a simple, flat, adjustable length polyester strap. By comparison, the component that transferred the weight of a climber from the foot loop to the ascender cam in the previously-accused Original SAKA was a much more complex structure, consisting of two separate hollow tubes permanently affixed to a

polyester strap. The tubes and strap were all permanently sewn together to form a single, integrated, guide unit. This complex guide unit was the component that transferred the weight from the foot loop to the ascender cam in the Original SAKA.

This difference between the weight-transferring component of the Mini-max as compared to the weight-transferring component of the Original SAKA is highly material for purposes of the 190 patent. A key claim limitation of the 190 patent is the so-called "load bearing member." Importantly, the patent specification defines the load bearing member as "the component that, when the weight of the climber [is] shifted to the foot attachment, transfers the load to the ascender." 190 patent [6:7-12]. All claims of the patent require the existence of a load bearing member. However, all claims also require that the load bearing member have "a hollow core." See, e.g., claim 1 [8:63] ("a load bearing member having a hollow core").

The difference between a new product and a product that was the subject of a prior patent infringement lawsuit is deemed "material" if the difference is "related to" one or more claim limitations in the patent. *See, e.g., Foster*, 947 F.2d at 480 ("changes **unrelated** to the limitations in the claim of the patent would not present a new cause of action" (emphasis supplied)). In the present case, the differences between the Mini-max and the Original SAKA are directly related to claim limitations in the 190 patent, namely the limitations relating to the "load bearing member having a hollow core." Therefore, under *Foster* and its progeny, the difference is deemed material. Because the difference is material, Defendants agree that the Agreement does not prevent Weaver from asserting patent infringement against the Mini-max (although Defendants vehemently disagree that the Mini-max infringes, as explained in the following section).

### 2. The SAKA-min-max does not infringe the 190 patent because it is missing multiple claim limitations

The Mini-max does not infringe the 190 patent at least because it is missing these claim limitations, each of which appear in all claims of the 190 patent:

- "a load bearing member having a hollow core open at an aperture" *see, e.g.,* Claim 1 [8:63]

- "an elastic cord having a fixed end and a free end" … wherein … an exterior portion of the length of the elastic cord extends through the aperture to the free end…." *See, e.g.,* Claim 1 [8:61-62 and 9:1-2].

Defendants dispute Weaver's claim chart (attached as Ex. I to the Complaint and incorporated by reference into Weaver's Brief). Attached to this brief as Exhibit A is Defendants' detailed explanation showing that the Mini-max does not include the "load bearing member having a hollow core" limitation and does not include the "elastic cord" limitation.

### B. Defendants have not breached § 2.2 ("Discontinuance of Product") of the Agreement

Weaver falsely asserts that █████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████

　　████████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████████████

　　████████████████████████████████

████████████████████████████████████

████████████████████████████ *see also Hallco*, 256 F.3d at 1297-98. ████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████ *Foster*, 947 F.2d at 479-80.

　　████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

██████████

As shown above (*supra*, at pp. 1-3), the Mini-max is materially different from the Original SAKA. Weaver does not dispute the existence of material differences between the Mini-max and the Original SAKA.[1] Instead, Weaver posits that the Mini-max "forms a version" of the Original SAKA (Complaint ¶ 30; PI Brief at 4), and that the purpose of Mini-max is to "provide the equivalent of the Original SAKA." These vague characterizations of the Mini-max have no legal relevance to the issue of whether the two products are materially different.

For the foregoing reasons, Defendants' making, selling, using, and offering for sale the Mini-max does not constitute a breach of the Agreement.

### C.  Defendants have not breached ██████████████████ f the Agreement

#### 1. The Court should apply an objective reasonableness standard to ascertain whether ████████████████████████████████████

Weaver argues that Defendants ████████████████████████████████████████

████████████ Weaver's brief is peppered with various iterations of the same sweeping, conclusory allegations of "disparagement." *See, e.g.,* p.2 ("Mumford continues to relentlessly disparage" Weaver); p.6 ("Mumford has made numerous disparaging statements and representations"); p.6 ("Mumford's disparaging statements and representations violate the Agreement"); p.7 ("continues to disparage"); p.12 ("making disparaging statements and representations"); p.12 ("postings comments and likes constitute disparaging statements or

---

[1] If Weaver changes its position and later tries to argue that the two products are not materially different, Weaver bears the burden of proof. *Foster,* 947 F.2d at 480.

6

representations"); p.13 ("Mumford's … disparaging statements and representations are rich in false, misleading or opinionated statements").

Weaver's Brief, however, merely incorporates by reference eight paragraphs in the Complaint, which in turn depict a lengthy collection of screen shots of exchanges allegedly between Mr. Mumford and various other Internet users. Weaver simply "cut and pasted" these screen shots into its Complaint. It is quite telling that, despite its lengthy collection of Internet posts, Weaver specifies with clarity neither which of Mr. Mumford's statements it contends to be disparaging nor why any of them are considered to be disparaging.

The reason Weaver never identifies what it contends to be disparaging is quite simple: because none of Mr. Mumford's alleged statements are disparaging. They are not disparaging either under a plain language dictionary definition of disparaging ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

It is abundantly clear from Weaver's Brief and the Complaint that Weaver's entire argument is premised upon an entirely *subjective* interpretation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Weaver argues that whether a statement by Mr. Mumford is disparaging depends *not* on an objective evaluation of the statement itself, but instead depends upon the subjective response provided by someone who reads it. Thus, rather than identifying what exactly is supposedly disparaging about any statement made by Mr. Mumford, Weaver instead relies upon statements made by persons other than Mr. Mumford.

Weaver's argument suffers from two closely related flaws. First, as a general matter, whether a statement by Mumford ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ must be determined from the statement itself – not from the recipient's reaction. *See, e.g., Waldman v. Pitcher*, 70 N.E.3d 1025, 1032 (Oh. App. 2016) (Whether a letter would constitute a breach of a

7

non-disparagement provision in a settlement agreement was dependent entirely on the content of the letter itself, which "was fixed in the text of the letters" and "was set with specificity," not the intended recipient's "reaction" to the letter, which was "irrelevant".) Weaver points not to Mumford's own statements, but to what various other people said in response.

Second, Weaver's argument seems to be applying some unknown, subjective standard to evaluate whether any accused statement is "disparaging." Contrary to Weaver's implicit argument, statements cannot be evaluated based upon some subjective interpretation afforded by Weaver or its employees. Whether Weaver likes or dislikes a statement by Mr. Mumford or anyone else is not relevant. ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████

"The meaning that will determine legal effect [in a contract] is that which is arrived at by objective standards." *Bach v. Friden Calculating Mach. Co.*, 155 F.2d 361, 365 (6th Cir. 1946) (internal cites and quotes omitted). A party's subjective intent is not binding. *Id.;* see also *In Re ASPC Corp.*, 601 B.R. 766, 792 (Bankr. S.D. Oh. 2019) ("The determination of the materiality of a breach must be based largely on a standard of objective reasonableness, rather than purely subjective belief" (quoting 23 *Williston on Contracts* § 63:3 (4th ed. 2016))).

**2. Applying an objective reasonableness standard, Mr. Mumford's statements did not disparage Weaver.**

████████████████████████████████████████████████████████████████

████████████████████████████████ ██ Mr. Mumford's alleged statements cannot be considered

---
[2] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

8

"disparaging." Each of the paragraphs identified in the Complaint as containing allegedly disparaging statements by Mumford are addressed individually in the summary submitted with this motion as Exhibit B. Exhibit B demonstrates that none of Mr. Mumford's posts were even arguably disparaging ███████████████████████████.

**D.    Defendants have not breached** ███████████████████████████

Weaver's Brief inaccurately argues that Mr. Mumford ███████████████████████ ███████████████████████ Again, Weaver does not explain precisely what confidential information was allegedly disclosed by Defendants. Mr. Mumford was free to mention the existence of the Agreement, because existence of the Agreement was not "confidential." For example, Weaver itself publicly announced the existence of the Settlement Agreement by publicly filing the "Joint Stipulation of Dismissal." (The Stipulation is part of Ex. B to Weaver's Complaint, specifically, "Ex. A" to Ex. B). ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████

---

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████

9

### E. Mr. Mumford did not make any false or misleading statements

Weaver also contends that Mr. Mumford breached the Agreement by making allegedly "false or misleading" statements. Weaver argues that Mr. Mumford "wrongly posted on social media platforms that he has received "threats" and "pressure" from Weaver." Weaver Brief, at 12. It is unclear why Weaver is comfortable arguing that Mr. Mumford's statement was false and misleading, because it was absolutely true and not misleading in any way. Weaver wrote a letter to Mr. Mumford pressuring him to, among other things, stop selling the Mini-max, and it threatened him with a lawsuit if he did not comply within eight business days. *See* Ex. G to Complaint.

Second, Weaver argues that Mumford has misled because he allegedly "suggest[s] or directly state[s] that his own patent aimed at the Original SAKA confers the right on Mumford to operate and sell the Original SAKA." Weaver Brief at 13. It takes an enormous leap of creative thinking on the part of the reader to even try to comprehend Weaver's argument about this. In any event, the Settlement Agreement does not prohibit Mr. Weaver from telling anyone about his own patent, and indeed, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Directly contrary to Weaver's argument, Mr. Mumford has stated expressly that he is not allowed to sell the Original SAKA and that it is no longer available. *See, e.g,* Complaint ¶42.

Weaver also complains that Mr. Mumford has represented that the SAKA products are distinguishable from Weaver's products, and that these representations "are false and misleading as it is only the claims of a patent that define the rights in intellectual property." Weaver Brief at 13. The point of Weaver's argument here is entirely unclear. In any event, the truth is that Mr.

Mumford's products *are* materially distinguishable from Weaver's products. They enjoy the use of the distinguishing SAKA trademark. And they offer features not available in Weaver's products. Mumford Dec. ¶27. Many other differences exist. Mr. Mumford's stating as much does not constitute a misrepresentation and is not misleading in any way.

## II.  WEAVER HAS NOT SUFFERED IRREPARABLE INJURY

Weaver has failed to show evidence of *any* irreparable injury, much less evidence making the requisite showing that irreparable injury is "likely." *See Lieberman v. Husted*, 900 F. Supp. 2d 767, 781 (S.D. Ohio 2012) (irreparable harm must be shown to be likely, not merely possible). The "harm alleged cannot be 'speculative or theoretical.' " *Id.* A movant must provide actual "evidence" that harm has "actually occurred in the past and is likely to occur again." *Id.; see also Turner v. Lerner, Sampson & Rothfuss*, No. 1:11–CV–00056, 2011 WL 1357451, at * 3 (N.D. Ohio April 11, 2011) ("In establishing the harm, a movant must provide record evidence, such as facts and affidavits, from which the court can make specific findings.").

[text redacted]

██████████████████████████████████████
████████

Weaver also argues that Defendants' (unspecified) online statements damaged Weaver's "reputation." Weaver Brief at 15. Weaver cites no evidence whatsoever that any statement made by Defendants caused damage to Weavers' reputation. Statements made by others within the climbing community show, at most, that Weaver is apparently suffering generally from a pre-existing poor reputation (for example, by allegedly throwing thousands of pounds of "toxic lead" into the environment). *See* Complaint ¶45. Weaver has offered no explanation about why the entry of a preliminary injunction would somehow improve what appears to have been caused by Weaver's own prior alleged conduct.

Weaver raises a mysterious reference to "surreptitious business activities." Weaver Brief at 15. Weaver cites to no evidence of any "surreptitious" activity and does not even hint at what it means by this assertion. Also on page 15 of its Brief, Weaver alleges as evidence of irreparable harm "Mumford's refusal to be forthright." Again, Weaver offers not one shred of evidence to support this allegation – instead Weaver merely references its own demand letter (Complaint, Ex. G), which hardly constitutes evidence of Mr. Mumford not being forthright. And *even if* evidence existed of Defendants acting surreptitiously or being less than "forthright" – and such evidence does not exist – it would not constitute evidence of irreparable harm.

Finally, in the last paragraph of page 15, Weaver's brief makes sweeping allegations that it "has suffered and will continue to suffer" irreparable harm from "price erosion, damage to ongoing customer relationships, loss of customer goodwill, and loss of business opportunities." Weaver's Brief at 15. Again, Weaver offers absolutely no evidence to show that it has suffered any of these entirely hypothetical conditions, much less that Defendants' conduct has caused any

12

of these conditions. Weaver's conclusory claims of harm fall far short of the requisite showing of irreparable harm. *See, e.g., Thompson v. ABN Amro Mortgage Group*, No. 10–13097, 2010 WL 3842027, at *1 (E.D. Mich. Sept.28, 2010) ("sweeping" and "conclusory" allegations that "lack factual support" are insufficient to support preliminary injunctive relief); *see also Lieberman,* 900 F. Supp. at 781 (movant must provide evidence of harm); *Turner,* 2011 WL 1357451, at * 3 (record evidence of actual harm, such as facts and affidavits, required).

## III. WEAVER HAS NOT SHOWN A "CAUSAL NEXUS"

A preliminary injunction with respect to Weaver's patent infringement claim is inappropriate for the additional reason that there is no "sufficiently strong causal nexus" between the sales of the Mini-max and the invention claimed in the 190 patent. *See Apple, Inc. v. Samsung Elec. Co., Ltd.*, 695 F.3d 1376, 1374 (Fed. Cir. 2012) (finding an abuse of discretion in a patent case for failure to properly evaluate the existence of a causal nexus). Weaver must show that a patented feature is what "drives consumer demand for the accused product." *Id.*

Weaver has not alleged even the existence of, much less submitted any evidence of, any causal nexus. Defendants, on the other hand, have shown that no causal nexus exists because the popularity of the Mini-max is driven by features unrelated to the 190 patent. Unlike Weaver's patented product, customers desire the Mini-max because it offers modular construction which allows for easy replacement of any damaged component, a lightweight and compact design, and easy adjustments for varying height of climbers. Mumford Dec. ¶27.

## IV. ISSUANCE OF A PRELIMINARY INJUNCTION WILL CAUSE SUBSTANTIAL HARM TO DEFENDANTS

The "balance of hardships" factor strongly favors the Defendants. Climbing Innovations is a tiny company being run out of Mr. Mumford's home. Mumford Dec. ¶25. An injunction preventing it from selling the Mini-max and the conversion kit will cause it material financial

harm and could realistically force it out of business. *Id. at* ¶26; *see Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed.Cir.1997). (holding that it was proper for district court to consider relative size of parties and potential harm to the defendant in evaluating the balance of hardships factor).

Other than sweeping, conclusory allegations, Weaver has provided no explanation – much less any evidence – to support its argument that a preliminary injunction would cause less harm to Defendants than harm to absent injunctive relief. Weaver argues that because Defendants have "many other products" they can sell, a preliminary injunction would not harm them. Weaver cites no evidence to support this allegation.

## V.   A PRELIMINARY INJUNCTION WILL HARM THE PUBLIC INTEREST

The final factor the Court must consider in evaluating whether to grant a preliminary injunction is the potential for the injunction to harm the public interest. The "public" that would be most affected by an injunction in this case is the rope climbing community – those who use rope ascenders and related products. The community has given enthusiastic feedback regarding the features of the Mini-max that are not related in any way to Weaver's patent claims and that are not available in the Weaver product that is covered by the 190 patent. Mumford Dec. ¶27. Some of these features include lightweight design, modular construction allowing for easy replacement of damaged components, and the ability to adjust the device to fit a wide range of the stride length and physical height of climbers. *Id.* There is a strong public interest in maintaining competition and competitive products in the marketplace. The issuance of a preliminary injunction would limit the climbing community's ability to obtain a "more versatile" product. *See, e.g.,* Complaint, ¶41 (post by "climbstihl").

14

**CONCLUSION: WEAVER IS NOT ENTITLED TO A PRELIMINARY INJUNCTION**

In summary, all factors relevant to evaluating the appropriateness of preliminary injunctive relief favor the Defendants. For the foregoing reasons, Defendants respectfully request the Court to deny Weaver Leather, LLC's motion for a preliminary injunction.

Respectfully submitted,

Dated: September 20, 2019

                                          s/ William F. Long
                                          William F. Long
                                          SMITH GAMBRELL & RUSSELL LLP
                                          1230 Peachtree Street NE
                                          Promenade, Suite 3100
                                          Atlanta, Georgia 30309
                                          tel. 404-815-3500
                                          fax 404-685-6859
                                          blong@sgrlaw.com
                                          Counsel for Climbing Innovations, LLC
                                          and Richard Mumford

CERTIFICATE OF SERVICE

I certify that on September 20, 2019, I served the foregoing document, including Exhibits (which is being filed under seal) on all counsel of record by email. I further certify that on September 20, 2019 I served on all counsel of record the redacted versions not filed under seal by filing them with the ND Ohio electronic filing system, and also by emailing them to all counsel of record.

s/ William F. Long