# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Weaver Leather, LLC | ) | |
|     Plaintiff, | ) | Case No. 5:19cv1990-JRA |
| | ) | Judge John R. Adams |
| vs. | ) | |
| | ) | |
| Climbing Innovations, LLC and | ) | **EXHIBIT A** |
| Richard Mumford | ) | |
| | ) | |
|     Defendants. | ) | |

### EXHIBIT A:
### DEFENDANTS' PRELIMINARY RESPONSE TO WEAVER'S CLAIM CHART

Defendants Climbing Innovations, LLC and Mr. Richard Mumford submit this Exhibit A to their memorandum in opposition to plaintiff's motion for a preliminary injunction. This Exhibit A summarizes Defendants' preliminary response to Plaintiff's claim chart attached to the Complaint as Exhibit I, which is incorporated by reference into Plaintiff's Memorandum In Support of Preliminary Injunction on pages 9 and 12. This response is preliminary, and Defendants' reserve their right to amend or supplement in accordance with the Local Patent Rules.

Defendants do not infringe the 190 patent, because the accused SAKA-mini-max does not include at least these limitations (and these limitations appear in *all* claims of the 190 patent):

- "a load bearing member having a hollow core open at an aperture"  Claim 1 [8:63]

- "an elastic cord having a fixed end and a free end … wherein … an exterior portion of the length of the elastic cord extends through the aperture to the free end…."  Claim 1 [8:61-62 and 9:1-2].

1

### 1. Defendants' accused products do not have a load bearing member having a hollow core.

#### a) Claim construction: "load bearing member having a hollow core"

Weaver posits that no claim limitations require construction and that all terms should be given their "plain language" interpretation. Defendants dispute Weaver's position at least with respect to the limitation "load bearing member having a hollow core."

Defendants propose the following constructions:

- "load bearing member" means "**the component that, when the weight of the climber and his or her encumbrances are shifted to the foot attachment, transfers the load to the ascender.**"

- "load bearing member having a hollow core" means "**the core of the load bearing member is hollow**"

Defendants' supporting basis for these constructions are set forth below. (Defendants reserve their right to contest the construction of other claim terms at the appropriate time.)

##### (1) "load bearing member"

When the patent specification reveals a special definition given to a claim term by the patentee that differs from plain meaning, "*the inventor's lexicography governs*." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc)(emphasis supplied).

The specification for the 190 patent provides an unmistakable definition to "load bearing member" as follows:

> "The load bearing member … is the component that, when the weight of the climber and his or her encumbrances are shifted to the foot attachment …, transfers the load to the ascender." [6:8-12].

2

This special definition is in complete accord with the remainder of the specification. *See, e.g.,* Abstract ("The load bearing member connects a foot attachment to an ascender and transfers loads applied to the foot attachment"); *see also* [5:23-27] "The load bearing member 6 is generally a body of material that will sufficiently bear the weight of the climber and his or her gear safely during a climb and will transfer that weight from the foot attachment to the ascender supported by the static line being climbed."

Thus, the proper definition of the load bearing member is "the component that, when the weight of the climber and his or her encumbrances are shifted to the foot attachment, transfers the load to the ascender."

       (2)  Load bearing member "having a hollow core"

Defendants also dispute Weaver's plain language proposal for "having a hollow core." Construction of this term is needed because the plain language use of the word "having" in this phrase renders the phrase ambiguous. For example, if a person is referred to as "having a hollow core," it could mean that the person is simply holding something with a hollow core in his hand, or it could mean that the core of the person himself is hollow. These two meanings are quite distinct.

The use of "having a hollow core" in the patent, as it relates to the load bearing member, makes clear that it is the latter meaning that applies, i.e., the core of the load bearing member itself must be hollow. The specification of the patent makes clear that it is core of the load bearing member itself that is hollow. The material forming the load bearing member completely surrounds the hollow core; or as further explained in the specification, the hollow core is "encased" within the load bearing member. *See, e.g.,* Abstract: "*encasing* an interior portion of the length of cord … *within* the load bearing member"; "The **load bearing member 6 is a hollow**

3

*structure*" [5:51]; "The *load bearing member 6 is hollow* in order to allow for the elastic cord 4 to be *encased* therein" [5:52-54 (emphasis supplied)]; "the aperture 24 provides an opening to the *hollow core* (e.g., 26) *of the load bearing member*" [6:33-34]; "the elastic cord 4 extends from the fixed end 14 through *the hollow core of the load bearing member* 6 to the aperture 24" [6:37-39]; "In a preferred embodiment, in which *the load bearing member 6 is a made of a hollow braided rope*" [6:43-45]; "a liner 34 may be secured within *the hollow core 26 of the load bearing member* 6"; [6:63-65]; "…drawing the fixed end [of the elastic cord] *encased within the load bearing member* 6". [8:31-34] . (Note: all emphasis in foregoing patent excerpts have emphasis supplied.)

The specification therefore repeatedly emphasizes that the load bearing member itself is hollow, or using the alternate wording in the specification, the hollow core is "encased" within the load bearing member. In light of this meaning from the specification, Defendants propose the following construction: "load bearing member having a hollow core" means "the core of the load bearing member is hollow"

### b) *The SAKA-mini-max does not have a load bearing member having a hollow core*

The SAKA-mini-max has a flat, black strap that is the one and only component in the SAKA-mini-max that has the capability of transferring the weight of the climber and his encumbrances to the ascender. Mumford Dec. ¶21. Thus, the black flat strap is the only component that can serve as the load bearing member. *Id*.

However, the core of the black flat strap is not hollow, it is a simple black polyester strap. *Id.* The SAKA-mini-max therefore does not satisfy the "load bearing member having a hollow core" limitation.

4

Weaver's claim chart argues that the red cord guide satisfies the "load bearing member having a hollow core." *See* Ex. I to Complaint. Although the red cord guide identified by Weaver includes two hollow tubes, neither the guide nor the tubes constitute the core of the flat black strap (i.e., the load bearing member). The guide has nothing to do with the transfer of weight from the foot loop to the ascender. Mumford Dec. ¶23. It is not possible to transfer any weight, load, or any other force via the guide, because the guide is connected to neither the ascender nor the foot loop. *Id.* Indeed, if any non-negligible weight were applied to the red cord guide, it would detach from the remainder of the device. *Id.* Rather than transferring any weight, the cord guide merely rests against the ascender via a loosely fitting "notch" which is physically incapable of transferring any load to or from the ascender. *Id.*

      **2.**    **The SAKA-mini-max does not have "an elastic cord having a fixed end and a free end."**

The SAKA-mini-max cannot infringe the 190 patent also because it does not have the requisite "elastic cord" recited in the claims of the 190 patent. Again, Weaver argues that "plain language" applies to all the claim terms relating to the elastic cord. Even under Weaver's plain language interpretation, Weaver's argument of infringement fails.

The claims require the elastic cord to have a "fixed end" and a "free end," and the elastic cord also must pass "through the "hollow core [of the load bearing member]" and also must pass through "an aperture [in the load bearing member]." *See* claim 1 [8:61, 8:65, and 9:2].

The SAKA-mini-max includes two separate bungee cords. One of the bungee cords is directly attached to the ascender cam. This cord cannot meet the "elastic cord" limitation in claim 1 because it does not pass through anything, much less pass through any hollow core or any aperture. Weaver does not even argue that this bungee cord meets the "elastic cord" limitation.

Thus, Weaver alleges that the second bungee cord meets the "elastic cord" limitation. Weaver is wrong.

Under any plain language interpretation, and as explained in the specification, a cord has two ends. Claim 1 of the patent is consistent with this, but claim 1 requires one end of the cord to be "fixed" and the other end of the cord to be "free." The claim recites "an elastic cord having a fixed end and a free end." The specification explains that "[t]he elastic cord 4 has a fixed end 14 and a *free end 16* defining a length there between." [5:56-57 emphasis supplied]. In the 190 patent, the free end of the cord is quite obviously "free" – attached to nothing. See Figs. 1 and 2, item 16 (the free end).

The second cord (identified by Weaver as having a free end) in the SAKA-mini-max does not in fact have any "free end" under Weaver's own argument. The second cord according to Weaver instead has two "fixed ends." Both ends in the second cord have identical connections, and Weaver argues that the connection for these two ends are each "fixed."

So, to state the obvious: if both ends of the second cord are fixed, neither end can be "free." The second cord therefore cannot satisfy the "elastic cord" limitation under Weaver's plain language interpretation.

Without the existence of an actual free end in the second cord, Weaver makes the quite remarkable argument that *the middle of the cord* constitutes the "free end" of the cord. To repeat: Weaver argues that the middle of the cord satisfies the claim limitation requiring the cord to have "a free end." That argument is not even colorable – a cord has two ends and a middle, and the middle of the cord is most decidedly not the end of the cord.

Respectfully submitted,

Dated: September 20, 2019
              s/ William F. Long
              William F. Long
              SMITH GAMBRELL & RUSSELL LLP

1230 Peachtree Street NE
Promenade, Suite 3100
Atlanta, Georgia 30309
tel. 404-815-3500
fax 404-685-6859
blong@sgrlaw.com
Counsel for Climbing Innovations, LLC
and Richard Mumford

7