UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Weaver Leather, LLC ) | |
| ) | CASE NO.: 5:19-cv-01990-JRA |
| Plaintiff ) | |
| v. ) | JUDGE: JOHN R. ADAMS |
| ) | |
| Climbing Innovations, LLC, et al. ) | |
| ) | |
| Defendants ) | |

**SPECIAL MASTER'S RULING ON WHETHER CLAIMS 1 AND 12 OF
U.S. PATENT NO. 9,352,190 ARE INFRINGED BY THE SAKA MINI-MAX
AND/OR THE SAKA MINI CONVERSION KIT**

By the Stipulated Order of Doc. #48, the Special Master was appointed to rule on the issue of infringement of independent claims 1 and 12 of U.S. Patent No. 9,352,190 (the '190 patent).

The Special Master has reviewed the pleadings, motions and supporting briefs/memoranda of record or otherwise provided to him in these proceedings. Particular attention has been given to the briefing on Plaintiff's Motion to Dismiss, Plaintiff's Motion for Preliminary Injunction and the opening and reply briefs exchanged by the parties on the three issues for consideration by the Special Master.

The Special Master was also provided with physical exemplars of various products having varying degrees of relevance to the issue at hand, to wit:

- Plaintiff's Exhibit O – SAKA product that was the subject of the Settlement Agreement in prior litigation;

- Plaintiff's Exhibit P – SAKA Mini-Max;

- Defendants' Exhibit 2 – Weaver Leather's Knee Ascender purportedly covered by the '190 patent;

1

- Defendants' Exhibit 3 – Original SAKA by Climbing Innovations;
- Defendants' Exhibit 4 – SAKA-Mini by Climbing Innovations; and
- Defendants' Exhibit 5 – SAKA-Mini Max at issue here.

While the infringement assessment is to address the SAKA Mini-Max product as well as the product made with the SAKA Mini Conversion Kit, it is understood that the product made with the conversion kit and the SAKA Mini-Max are equivalent for purposes of assessing infringement of the '190 patent. Accordingly, treatment herein will be directed to the SAKA Mini-Max alone, with the opinion and ruling covering both.

The determination of infringement is a two-step process. First, the patent claims in issue must be construed and, thereafter, the Accused Product is to be assessed in view of those claims. *Tinnus Enterprises, LLC v. Telebrands Corp.,* 846 F.3d 1190, 1203 (Fed. Cir. 2017) (quoting *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.,* 808 F.3d 1313, 1316 (F. Cir. 2015)). That is the task at hand.

It is a "cardinal principal that the accused device must be compared to the claims rather than to a preferred or commercial embodiment." *Amgen Inc. v. Hoechst Marian Roussel, Inc.,* 314 F.3d 1313, 1347 (Fed. Cir. 2003)  While a number of physical exemplars of devices have been provided, and while those exemplars have been beneficial in gaining a general understanding of the technology involved, the only exemplar of interest here is the SAKA Mini-Max, Plaintiff's Exhibit P, and Defendants' Exhibit 5, as presented above. For all relevant purposes, the two are identical.

Contrary to the suggestions of Plaintiff Weaver, there was never a finding or concession by Climbing Innovations or Mumford (hereinafter jointly "Mumford") in the prior litigation of Weaver Leather, LLC v. Climbing Innovations, LLC et al., Case No. 2:19-cv-00231-JP (ED Pa.),

2

or the Settlement Agreement and Release (Doc. 1-2) terminating that litigation, that would amount to a finding, admission, concession, or other bar relevant here that the SAKA device at issue in that case infringed any claim of the '190 patent. In order to settle the case, Mumford simply agreed to no longer make the product at issue in that case or any other product that might infringe the '190 patent.

**Claim Construction.**

On the issue of claim construction, Weaver contends that "[T]he claim terms consist of common, easy-to-understand English words that are used consistent with their ordinary and customary meanings," and there is no need for "any formal construction because the meaning is clear from the words themselves and formal construction may actually complicate things." (citing cases)

Mumford argues that the terms "load bearing member" and "load bearing member having a hollow core" should be construed.

As to the term "load bearing member," the specification of the '190 patent provides a clear and intentional definition:

> The load bearing member…is the component that, when the weight of the climber and his or her encumbrances are shifted to the foot attachment…, transfers the load to the ascender. (col. 6, ll. 8-12)

The Abstract, specification and drawings are replete with consistent recitations. This special definition, clearly stated in the specification, governs the construction of the same term when used in the claims. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1316 (Fed. Cir. 2005) (*en banc*). Accordingly, the term "load bearing member" is construed to mean "the component that, when the weight of the climber and his or her encumbrances are shifted to the foot attachment, transfers the load to the ascender."

3

With regard to the claim term "load bearing member having a hollow core," advanced by Mumford as requiring construction, the Special Master disagrees. With "load bearing member" having been defined, no further assistance to the trier of fact is necessary to employ the words "having a hollow core."

**Infringement Analysis.**

Having construed the necessary claim terms, attention can now be directed to the Accused Product itself in comparison to independent claims 1 and 12 of the '190 patent. It is fundamental that "to find infringement, plaintiff must show the presence of every [claim] element or its substantial equivalent in the accused device." *Lemelson v. U.S.,* 752 F.2d 1538 (Fed. Cir. 1985). This "All Elements Rule" is not satisfied, and there is no infringement, if any claim element is missing.

Weaver contends that "the black strap and red double bungee [of the Accused Products] form a single component when attached" and that "the red double bungee bears a load as evidenced by the extension and contraction of the elastic cord as a user ascends up a rope." One would certainly expect that when the weight of a climber's foot is **released** from the foot attachment, the stretched elastic cord would tend the ascender to advance it up the rope and the elastic cord would need to overcome the load of the weight of the Accused Product, as well as the drag against the rope upon which it is tending. But, this is not the load of the load bearing member of the claims. That term was construed above, consistent with the specification. Specifically, the claims reference the "load bearing member" as bearing the weight of the climber and his or her encumbrances [when the weight is] **shifted to the foot attachment.**

In the Accused Products, the red bungees do not bear the load while tending—they are the load, along with the black strap, foot strap, and ascender. The load is borne by the elastic

4

cord, and the "elastic cord" is an element of both claims 1 and 12 that is separate and distinct from the "load bearing member" of those claims as expressly defined in the specification of the '190 patent at col. 6, ll. 9-12.

In the Accused Products, a black strap is fixedly secured to an ascender at a first end, and adjustably secured to a foot strap at the opposite end. The black strap alone "transfers the load [of the climber and his or her encumbrances] to the ascender." Indeed, the only element that interconnects the ascender with the foot strap is the black strap and, hence, it is the only element that can transfer force or load from the foot strap to the ascender.

An elastic cord is looped to pass through the central cores of a pair of bungees, and the ends of the looped elastic cord are knotted to prevent the elastic cord from being retracted and to allow the elastic cord to accomplish the tending of the ascender on a static rope. The red bungees are interconnected by a central strip of Velcro. That central strip of Velcro is slit at its first end to be retained or removably retained by a screw or other fastener on the ascender, while the other end is totally free. The back side of the black strap is provided with a mating Velcro material to engage the Velcro strip joining the two bungees. Further, because the two bungees are not attached to the foot strap at all and are only removably retained by the ascender by means of a screw within an open-ended slot, the red bungees do not provide load bearing in the context of the construed claims, nor do they transfer any force. The effect of the removable, non-load-bearing attachment of the bungees to the black strap and the ascender is to simply position a free end of the looped elastic cord with respect to the ascender.

In light of the discussion above, it is clear that the Accused Products do not have a load bearing member having a hollow core open at an aperture. The red bungees, having open cores with apertures, are not load bearing in the context of the claims. Accordingly, the "load bearing

member having a hollow core open at an aperture" of claim 1 and the "load bearing member having an aperture" of claim 12 are not present in the Accused Products. Hence, the Accused Products do not infringe any of the claims of the '190 patent.

While it is not necessary to extend the infringement analysis further, for the purposes of completeness, the Special Master finds that the Accused Products do have "an elastic cord having a fixed end and a free end defining a length," as required by both independent claims 1 and 12. The claims are silent as to whether the elastic cord is straight, folded, looped, or otherwise configured. The elastic cord of the Accused Product is looped or folded. As such, it has an open end and a closed end. The open end has two constituent legs, each of which is characterized by a knot preventing it from being extracted through the red bungee. The closed end is a looped working end that can receive carabiners, boat snap devices, or other type of fasteners to effect its operative purpose.

For the reasons presented above, the "All Elements Rule" is not satisfied as to claims 1 and 12, the independent claims at issue. Hence, the SAKA Mini-Max and the SAKA Mini Conversion Kit do not infringe any of the claims of U.S. Patent No. 9,352,190.

**Dated: May 11, 2020**            Respectfully submitted,

*/s/ Ray L. Weber*
Ray L. Weber (0006497)
RENNER, KENNER, GREIVE, BOBAK,
TAYLOR & Weber CO., LPA
106 South Main Street, Suite 400
Akron, OH 44308-1412
Telephone: (330) 376-1242
Fax: (330) 376-9646
E-mail: rlweber@rennerkenner.com

***Special Master to Judge John R. Adams***