UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Weaver Leather, LLC ) | |
| ) | CASE NO.:  5:19-cv-01990-JRA |
| Plaintiff ) | |
| v. ) | JUDGE: JOHN R. ADAMS |
| ) | |
| Climbing Innovations, LLC, et al. ) | |
| ) | |
| Defendants ) | |

**SPECIAL MASTER'S RULING ON WHETHER PUBLICATIONS OF DEFENDANTS VIOLATE THE NON-DISPARAGEMENT PROVISION OF THE PRIOR SETTLEMENT AGREEMENT BETWEEN THE PARTIES**

The issue addressed here is whether Section 5.4 of a certain Settlement Agreement and Release (Doc. 1-2) between the parties herein has been breached by one or more publications by Defendant Mumford.

In Section 5.4(a) of the Settlement Agreement and Release, the parties agreed "not to make any disparaging statements or representations":

- Either directly or indirectly

- Whether orally or in writing

- By word or gesture

- To any Person whatsoever

- About the other party or

- Its attorneys or

- Its representatives or

- Its affiliates or

- Its successors or

1

- Any of its directors
- Officers
- Employees
- Attorneys
- Agents, or
- Representatives

The Agreement continues, defining a disparaging statement or representation as:

- any communication
- which if publicized to another
- would cause or tend to cause the recipient of the communication to question
- the business condition
- integrity
- competence
- good character or
- product quality
- of the Person to whom the communication relates.

The language used by the parties, "which if publicized," indicates that the parties agreed that the communication in issue would be adjudged disparaging or not based on an objective standard. Herein, Defendant Mumford has advocated that position, which is consistent with the finding of the court in *Waldman v. Pitcher*, 70 N.E.3d 1025, 1032 (Ohio App. 2016) ("The reaction of the OPR was irrelevant; the mere sending of the letter would constitute breach of the nondisparagement provision absent a public-policy exception."). Defendant Mumford also

advances, with regard to the Settlement Agreement and Release, that its legal effect must be "arrived at by objective standard," and not a party's subjective intent. *Bach v. Friden Calculating Mach. Co.,* 155 F.2d 361, 365 (6th Cir. 1946). The Special Master agrees.

Exhibit B to the Settlement Agreement provides a statement which Mumford could make:

> Many friends and customers have been asking, so I wanted to let you know that I have come to an agreement with Weaver. As many of you know, the SAKA and HAAS have been on the market for the past couple years. While I developed and have been selling SAKA for the past few years, the HAAS product was on the market first and the HAAS patent was applied for and issued. While we all believe in the benefits of innovation, I realize that our country also allows people to protect their intellectual property. Weaver and Frankhauser are defending and protecting theirs. If I had my patent first, I would do the same. The SAKA will no longer be on the market and I am looking toward the future.
>
> I will keep innovating and will turn my attention to moving forward and finding other products to serve the market. The climbing and arborist community as well as the developing of new technologies has made this an exciting journey, and I am very proud to be a part of it. However, I do not condone nor will I promote any boycott of products. I appreciate your support and now it is time for us all to move on.

The analysis begins, as it must, with the alleged disparaging statements of Defendant Mumford, without regard for the reaction to those statements, and accepting that the standard for adjudging disparagement is an objective one. On August 15, 2019, Mumford posts that:

- he is asking for help (against Weaver);

- he finds himself at the tip of a spear (held by Weaver);

- he is in a fight (against Weaver) for innovation;

- the fight (with Weaver) is about being able to provide climbers with products that can make a high-risk job safer and give climbers the ability to choose what works best for them;

3

- he removed his original product from the market because of pressure from Weaver;
- he was issued a patent but cannot sell or use the original product (because of Weaver);
- he has a new product;
- he received a cease-and-desist letter from Weaver regarding his new product;
- his new product is at threat from Weaver of being taken away;
- he can cave into the threat from Weaver or stand up and fight for keeping choices for climbers.

The Settlement Agreement and Release in issue resolved prior litigation between the parties.  The document itself evidences that the parties were represented by counsel and the agreement was negotiated and agreed to by the parties with the assistance of counsel.

The non-disparagement provision of Section 5.4 appears to have been carefully drafted by the parties and their counsel providing, in subsection (a), a clear statement of what is proscribed with regard to disparaging statements or representations.  Subsection (a) continues with a clear and unambiguous definition of "a disparaging statement or representation" as contemplated by the section, along with an express exclusion from that definition.

Subsection (b) specifically authorized the statement by Defendant Mumford presented above.

Subsection (c) provides for liquidated damages for a breach of subsection 5.4(a).

Despite the details of Section 5.4, and the acknowledgement by the parties of their Reliance on Own Counsel (Section 6.7), Defendant Mumford challenges the agreement as being overly broad (restricting communications to "his wife, his religious counselor, or even to his own attorney"), ignoring the privileges incident to such communications.  Mumford also ignores the fact that the specific communications in issue here were to none of these people, but rather to people in the market interested in buying product and selecting the source as between Plaintiff Weaver Leather and Defendant Mumford.

Moreover, the agreement itself, at Section 6.9 "Severability," contains the somewhat standard provision for modification of the agreement "so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible."

As discussed above and as Defendant Mumford advances, the statements in issue are to be evaluated objectively, without regard to the recipient's response, and measured before the statement is ever communicated to another.  To that end, the responses to Defendant Mumford's posts in issue are irrelevant.

What is relevant is the fact that the primary posts of Defendant Mumford, aka "yoyo man," are replete with statements that are, on their face, disparaging of Plaintiff Weaver, bringing into question Plaintiff's business condition, integrity, competence, good character and product quality.  The posts would have that impact when publicized to a reasonable, rational person, as Defendant Mumford advances as necessary.  Indeed, it is difficult to imagine why Defendant Mumford would make the publications in issue, for it seems to fly in the face of his authorized statement that "now it is time for us all to move on."

Defendant Mumford can hardly be considered to have "moved on" when his posts seek help against Plaintiff Weaver suggesting that Weaver has Mumford at the tip of a spear, that there is an ongoing "fight," that Weaver does not have the bests interests of climbers in mind, that Weaver pressured Mumford to remove his original product from the market—even though that product was patented, and that now Weaver is challenging Mumford's new product to deprive climbers the opportunity to choose that new product over Weaver's product. All of this suggests to the reader that Weaver is a company that uses threats and intimidation to stifle competition. It even goes so far as to suggest that Defendant Mumford's patent gives Mumford the right to make and sell its product, when, in fact, such is a misstatement of the law.

While Plaintiff Weaver appears to be taking appropriate action by sending cease-and-desist letters to Defendant Mumford, or bringing suits for patent infringement, allowing the legal system to sort out who is right and who is wrong, Mumford has chosen to take his matter to the court of public opinion through blogs, Facebook and Instagram posts, GoFundMe, Tree Buzz Forum, and the like. The only way that Defendant Mumford can benefit from those forums is by turning consumers against Plaintiff Weaver for its purported heavy-handed tactics, lack of integrity, and absence of good character.

For the foregoing reasons, the posts of "yoyo man" discussed above are found to be in violation of Section 5.4 of the Settlement Agreement and Release in that, under an objective standard, it "would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character, or product quality" of Plaintiff Weaver.

6

It is noted that Section 6.5(b) of the Settlement Agreement and Release provides "a liquidated damages award to Weaver by Mumford of $5,000 per occurrence," which the Special Master finds to be beyond the scope of his appointment and leaves to further subsequent assessment and evaluation by the Court.

**Dated:  May 11, 2020**　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　*/s/ Ray L. Weber*
　　　　　　　　　　　　　　　　　　Ray L. Weber  (0006497)
　　　　　　　　　　　　　　　　　　RENNER, KENNER, GREIVE, BOBAK,
　　　　　　　　　　　　　　　　　　TAYLOR & Weber CO., LPA
　　　　　　　　　　　　　　　　　　106 South Main Street, Suite 400
　　　　　　　　　　　　　　　　　　Akron, OH  44308-1412
　　　　　　　　　　　　　　　　　　Telephone: (330) 376-1242
　　　　　　　　　　　　　　　　　　Fax: (330) 376-9646
　　　　　　　　　　　　　　　　　　E-mail: rlweber@rennerkenner.com

　　　　　　　　　　　　　　　　　　***Special Master to Judge John R. Adams***